STATE OF MINNESOTA

IN SUPREME COURT

A14-1042

Tax Court                                                                                    Dietzen, J.

Conga Corporation, d/b/a
Conga Latin Bistro,

              Respondent,

                                                                              Filed:  August 5, 2015
                                                                              Office of Appellate Courts
vs.

Commissioner of Revenue,

              Relator.

_____

Mark A. Pridgeon, Edina, Minnesota, for respondent.

Lori Swanson, Attorney General, Shannon M. Harmon, Tamar N. Gronvall, Assistant
Attorneys General, Saint Paul, Minnesota, for relator.

_____

S Y L L A B U S

1.      Minnesota Statutes § 271.06, subd. 6 (2014), sets forth the legal standard by
which the tax court reviews not only the orders of the Commissioner of Revenue, but also
the underlying decisions pertaining to that order.  The legal standard for review in section
271.06, subdivision 6, is separate and distinct from the standard of review applicable to
the review of an agency decision under the Minnesota Administrative Procedures Act,

1

Minn. Stat. § 14.69 (2014), which does not apply to the tax court's review of the Commissioner's audit decisions.

2.      The Commissioner of Revenue has the statutory authority to use an indirect audit to assess taxes when the taxpayer fails to produce adequate and complete books and records for audit, or the Commissioner reasonably determines that the taxpayer's books and records are not accurate or reliable.

3.      An indirect audit is not a "statistical or other sampling technique[]" within the meaning of Minn. Stat. § 270C.03, subd. 1(3) (2014). Consequently, the tax court erred by concluding that an indirect audit using the unit volume method is a "statistical or other sampling technique[]" subject to generally accepted auditing standards.

4.      The tax court erred in failing to independently review the record in order to determine the taxpayer's total sales, revenues, taxable income, and taxes owed.

Reversed and remanded.

## O P I N I O N

DIETZEN, Justice.

The Commissioner of the Minnesota Department of Revenue ("Commissioner") conducted an indirect audit of the sales and use tax returns for respondent, Conga Corporation, d/b/a Conga Latin Bistro ("Conga"), for the tax periods from January 1, 2007 through March 31, 2010.  Based on that audit, the Commissioner determined that Conga had unreported revenues for the relevant tax periods and issued an order assessing additional sales, use, and entertainment taxes, plus penalties and interest, against Conga. The tax court affirmed the Commissioner's order with respect to the assessment of 2007

2

taxes, but reversed with respect to the remainder of the audit period, concluding that the Commissioner's decision to conduct an indirect audit was not supported by substantial evidence in the record. *Conga Corp. v. Comm'r of Revenue*, No. 8264 R, 2014 WL 1711795, at \*12 (Minn. T.C. Apr. 24, 2014). For the reasons that follow, we reverse and remand to the tax court for further proceedings consistent with this opinion.

Conga operates a restaurant, nightclub, and bar on East Hennepin Avenue in Minneapolis. In June 2009, the Commissioner notified Conga that an audit would be conducted for the period of January 1, 2007, through March 31, 2010.[1] The auditor met with Conga, reviewed its files and documents, and determined that Conga had no records for 2007 and that its records for the other tax periods were not reliable. As a result, the auditor decided to use an indirect audit method to reconstruct some of Conga's alcohol sales, some of its revenues from cover charges, and its estimates on use tax liability based on giveaways and payments. Specifically, the auditor reconstructed Conga's 2008 alcohol sales using the "unit volume method" to compare Conga's alcohol purchases (liquor, beer, wine) to its likely alcohol sales.[2] Based on this reconstruction, the auditor determined that Conga had $198,344.80 more in alcohol sales than it had reported in its

---

[1] Conga was the subject of two previous audits. Initially, Conga was audited for the period of January 1, 2000, through September 30, 2002, because it did not file sales and use tax returns or pay sales and use taxes. The audit resulted in assessments totaling $129,877.05 in taxes, penalties, and interest. In 2007, Conga was audited for a second time for the period of September 1, 2003, through December 31, 2006, which resulted in assessments totaling $205,695.15 in taxes, penalties, and interest.

[2] The parties stipulated for the purpose of auditing Conga's sales and use tax returns that 2008 was a representative year. Based on that stipulation, the determinations made for 2008 were extrapolated for the remaining years in the audit period.

Point-of-Sale (POS) system and on its sales tax returns for 2008. The auditor also determined that Conga had $45,500.04 in unreported cover charges and $1,274 in unreported service charges. By comparing Conga's unreported revenues as reconstructed to Conga's reported revenues for 2008, the auditor determined that Conga had underreported 33.326 percent of its total revenues for 2008. This underreporting rate was then applied to the sales and revenues reported by Conga to the Department of Revenue during calendar years 2007, 2009, and the first quarter of 2010 to calculate Conga's underreported revenues for the entire audit period.[3] Based on these calculations, the Commissioner assessed Conga $160,105.37 in additional sales, use, and entertainment taxes, plus penalties and interest.[4] Conga appealed the assessment to the Minnesota Tax Court pursuant to Minn. Stat. § 271.06 (2014). Conga argued, among other things, that the Commissioner's decision to use an indirect audit was improper and therefore the assessment was invalid.

At trial, the Commissioner presented evidence to explain the reasons for conducting an indirect audit. As explained by the Commissioner, the auditor had requested various documents from Conga, including the complete sales, purchases, and

[3]    The auditor reconstructed Conga's cover charge revenues based on likely attendance on certain days and a per-person charge; and, calculated Conga's use tax liability based on an estimate of alcohol giveaways and purchases for which no sales tax payment could be documented.

[4]    The assessment included $131,976.61 in additional tax; $13,979.85 in penalties; and $14,148.91 in interest as of the date of the order. After receiving additional information, the Commissioner agreed to remove certain items from the use-tax assessment, which reduced the total amount due to $125,353.30, including $103,233.21 in additional tax; $10,957.91 in penalties; and $11,162.18 in interest.

4

bookkeeping records for 2007, 2008, 2009. and 2010. Conga did not provide the requested records for 2007, but did provide some of the requested documents for the remainder of the audit period. Upon review of the records provided, the auditor identified discrepancies in several areas: between Conga's total liquor purchases as shown on supplier invoices versus its reported sales to the Department of Revenue; between Conga's bank deposits for 2008 versus the total revenues reported on its federal income tax return for that year; between income reported on Conga's income tax filings versus revenues reported on its sales and use tax filings; and between Conga's daily sales reports versus its monthly summaries and sales tax filings.

Based on these discrepancies, the auditor met with Conga representatives and requested additional information about the bar operations, as set forth in a detailed questionnaire. Sometime after that meeting, the auditor decided to conduct an indirect audit because Conga: (1) had been audited in the past; (2) had filed its sales and use tax returns late on five occasions; (3) had not filed returns for use tax, entertainment tax, or liquor gross receipts tax; (4) had no records for 2007; (5) had a discrepancy of $2,673 in liquor purchases; (6) had a discrepancy in its 2008 income and sales tax filings; and (7) had unexplained entries in its POS. At trial, the Commissioner presented additional reasons to support the decision to conduct an indirect audit, which are that: (8) Conga's owner commingled personal assets with those of the business; (9) some sales were made outside Conga's POS system; and (10) not all cover charges were deposited into Conga's corporate bank account.

5

The tax court turned first to the Commissioner's decision to conduct an indirect audit, and concluded that the Commissioner's authority to do so should be reviewed under the standard set forth in a provision of the Minnesota Administrative Procedure Act (MAPA), Minn. Stat. § 14.69 (2014). *Conga Corp. v. Comm'r of Revenue*, No. 8264 R, 2014 WL 1711795, at *15 (Minn. T.C. Apr. 24, 2014). Second, the tax court determined that an indirect audit is a "statistical or other sampling technique[]" within the meaning of Minn. Stat. § 270C.03, subd. 1(3) (2014), and therefore must be conducted in accordance with generally accepted auditing standards. *Conga Corp.*, 2014 WL 1711795, at *15. Third, although the tax court upheld the Commissioner's use of the indirect audit method for 2007 because Conga was unable to provide any records for that year, the court concluded that the Commissioner's use of an indirect audit for the remainder of the audit period was not supported by the record, and therefore reversed the remainder of the Commissioner's assessment order. *Id.* at *12.

The Commissioner now seeks review by this court pursuant to Minn. Stat. § 271.10, subd. 1 (2014). On appeal, the parties dispute whether the Commissioner erred in conducting an indirect audit to assess taxes, and the appropriate remedy if the Commissioner erred.

I.

The Commissioner argues that the tax court erred as a matter of law by reviewing the decision to conduct an indirect audit under the standard of review set forth in Minn. Stat. § 14.69; by limiting the circumstances in which an indirect audit may be used to

6

assess taxes; and by requiring an indirect audit to satisfy the requirements of Minn. Stat. § 270C.03, subd. 1(3), to be valid.

We review decisions from the Minnesota Tax Court to determine whether: (1) the tax court had jurisdiction; (2) the tax court's decision was supported by the evidence and was in conformity with the law; and (3) the tax court committed any other error of law. Minn. Stat. § 271.10, subd. 1; *McLane Minn., Inc. v. Comm'r of Revenue*, 773 N.W.2d 289, 292-93 (Minn. 2009). We review the tax court's legal determinations de novo. *Eden Prairie Mall, LLC v. Cty. of Hennepin*, 830 N.W.2d 16, 20 (Minn. 2013). But our review of the tax court's findings of fact is limited to determining whether there is sufficient evidence to support the court's decision. *Dreyling v. Comm'r of Revenue*, 753 N.W.2d 698, 701 (Minn. 2008).

A.

The Commissioner first argues that Minn. Stat. § 271.06, subd. 6, governs review of the Commissioner's orders, and that the tax court erred by concluding that review of the Commissioner's decision to conduct an indirect audit was governed by Minn. Stat. § 14.69. *See Conga Corp.*, 2014 WL 1711795, at *15.

The tax court acknowledged that its authority to review the Commissioner's order was governed by Minn. Stat. § 271.06, subd. 6, but concluded that there was no specific statutory standard that guided its review of the Commissioner's decision to use an indirect audit to assess taxes. The tax court relied on *Minnesota Public Interest Research Group v. Minnesota Environmental Quality Council* (*MPIRG*), 306 Minn. 370, 237

7

N.W.2d 375 (1975), to conclude that judicial review of agency decisions was governed by Minn. Stat. § 14.69.

To determine the scope of judicial review of the Commissioner's assessment order and the underlying decision to use an indirect audit to assess taxes, we must interpret the relevant provisions of Minn. Stat. § 14.69, and Minn. Stat. § 271.06, subd. 6. Statutory interpretation is a question of law that we review de novo. *In re Welfare of J.J.P.*, 831 N.W.2d 260, 264 (Minn. 2013). The goal of all statutory interpretation is to ascertain and effectuate the intent of the Legislature. Minn. Stat. § 645.16 (2014). When interpreting a statute, we give words and phrases their plain and ordinary meaning. *Staab v. Diocese of St. Cloud*, 813 N.W.2d 68, 72 (Minn. 2012). Further, we read the statute as a whole and give effect to all of its provisions. *Id.*

Section 14.69 sets forth the standard for judicial review conducted pursuant to Minn. Stat. §§ 14.63 –.68 (2014) of MAPA for a final decision in a contested case.[5] The scope of judicial review of such a decision considers whether the decision is: "(a) in violation of constitutional provisions; or (b) in excess of the statutory authority or

_____

[5]    A "contested case" is defined as a "proceeding before *an agency* in which the legal rights, duties, or privileges of specific parties are required by law or constitutional right to be determined after an agency hearing." Minn. Stat. § 14.02, subd. 3 (2014) (emphasis added). Notably, the tax court is excluded from the definition of "agency" in MAPA. Minn. Stat. § 14.02, subd. 2 (2014) (" 'Agency' means any state officer, board, commission, bureau, division, department, or tribunal, *other than a judicial branch court and the Tax Court*, having a statewide jurisdiction and authorized by law to make rules or to adjudicate contested cases." (emphasis added)). Therefore, an appeal to the tax court from a Commissioner's assessment order is not a "contested case" governed by Minn. Stat. § 14.69.

8

jurisdiction of the agency; or (c) made upon unlawful procedure; or (d) affected by other error of law; or (e) unsupported by substantial evidence in view of the entire record as submitted; or (f) arbitrary or capricious." Minn. Stat. § 14.69. Notably, however, Minn. Stat. § 14.03 (2014) provides that the provisions of MAPA are not applicable to certain state entities. Specifically, section 14.03, subdivision 1(e), provides that MAPA does not apply to "the Tax Court as provided by section 271.06."[6]

The Minnesota Tax Court is an independent agency of the executive branch. Minn. Stat. § 271.01, subd. 1 (2014). Minnesota Statutes § 271.06, subd. 1, provides that an appeal may be taken to the tax court "from any official order of the commissioner of revenue respecting any tax, fee, or assessment, or any matter pertaining thereto." When an appeal is so taken, the tax court has the "power to review and redetermine orders or decisions of the commissioner of revenue." Minn. Stat. § 271.05 (2014).

The procedure for appeals to the tax court from any official order or assessment of the Commissioner of Revenue or any matter pertaining thereto is governed by Minn. Stat. § 271.06, subd. 6. It provides:

> The Tax Court shall hear, consider, and determine without a jury every appeal de novo. A Tax Court judge may empanel an advisory jury upon the judge's motion. The Tax Court shall hold a public hearing in every case. All such parties shall have an opportunity to offer evidence and arguments at the hearing; provided, that the order of the commissioner or the appropriate unit of government in every case shall be prima facie valid.

*Id.*

---

[6]     We also note that the judicial review contemplated by Minn. Stat. §§ 14.63-.69 is initiated by a "petition for a writ of certiorari" that is "filed with the Court of Appeals." Minn. Stat. § 14.63.

9

Subdivision 6 clearly governs the standard of review applicable to the tax court's review of an order of the Commissioner. It logically follows that the same legal standard applies to the Commissioner's underlying decisions reflected in that order, including the decision to conduct an indirect audit. The first sentence of subdivision 6 states the tax court shall determine "every appeal de novo." It is undisputed that the Commissioner's order and "any matter pertaining" to the order are appealable to the tax court. *See* Minn. Stat. § 271.06, subd. 1. The most natural reading of subdivision 6 is that the legal standard therein governs not only the tax court's review of the Commissioner's order, but also the court's review of the Commissioner's underlying decisions that serve as the basis for that order. We discern no legislative intent to have Minn. Stat. § 14.69 govern review of the Commissioner's *decisions* and have Minn. Stat. § 271.06, subd. 6, govern review of the Commissioner's *orders*.

The tax court's reliance on *MPIRG* to support judicial review under section 14.69 is misplaced. It is true we stated in *MPIRG* that there "is a presumption in favor of judicial review of agency decisions in the absence of statutory language to the contrary." 306 Minn. at 376, 237 N.W.2d at 379. But in *MPIRG*, the statutes were "silent on the question of required hearings or the appealability of [the] decision not to require an environmental impact statement." *Id.* Section 271.06, however, is not silent. As noted above, this statute describes in several provisions the appeal procedures, including the tax court's scope of review. This statute also establishes the presumptive validity of the Commissioner's order, as do other statutory provisions relevant to the tax court's review. *See* Minn. Stat. § 297A.665(a)(1) (2014) (presumption that all sales are taxable). These

10

presumptions are not part of Minn. Stat. § 14.69. Nothing in the broad language of section 271.06 creates uncertainty as to the standard of review for the Commissioner's audit decisions.

We conclude that Minn. Stat. § 271.06, subd. 6, sets forth the legal standard by which the tax court reviews not only the orders of the Commissioner of Revenue, but also the underlying decisions pertaining to that order. The legal standard for review in section 271.06, subdivision 6, is separate and distinct from the standard of review applicable to the review of an agency decision under MAPA, Minn. Stat. § 14.69, which does not apply to the tax court's review of the Commissioner's audit decisions. Consequently, the legal standard for review of an agency decision in a contested case, as set forth in Minn. Stat. § 14.69, does not apply to the tax court's review of the Commissioner's audit decisions in proceedings before the tax court.

B.

The Commissioner next argues that the tax court erred in concluding that an indirect audit may be used only when a direct audit is not possible. According to the Commissioner, she has broad discretion to conduct an indirect audit of the taxpayer's records whenever it is reasonable to do so.

Minnesota Statutes § 270C.31, subd. 1 (2014), provides the Commissioner with the power and authority to "conduct[] an investigation or an audit of a taxpayer" to determine the accuracy of a return and to fix liability under the state's revenue laws. *See also* Minn. Stat. § 289A.35(a) (2014) ("[T]he commissioner . . . may make any audit or investigation that is considered necessary."). The Commissioner may also conduct

11

reasonable examinations of a taxpayer's place of business, and may inspect and copy the taxpayer's relevant books and records in whatever form to accomplish the purpose of the statute. Minn. Stat. § 270C.31, subd. 2 (2014).

At issue here are two types of audits: a direct audit and an indirect audit. A direct audit involves a review of the books and accounts of a taxpayer, whereas an indirect audit involves a review of the accounts available to the auditor as well as a review of information provided by the taxpayer and available from other sources. Internal Revenue Manual (I.R.M.) § 4.10.4.2.7–.8 (2011). The indirect audit here relied on a "unit volume" method to reconstruct Conga's sales during the audit period.[7] With this method, an auditor reconstructs a taxpayer's alcohol sales by using the taxpayer's alcohol purchases (verified from suppliers' invoices) and information provided by the taxpayer regarding the "pour size" of drinks and sales prices, and allowing for spillage and waste of product, to determine the total number of drinks sold and, by extension, the total revenues the business should have generated at given prices for the amount of alcohol purchased. The auditor then compares those numbers with the taxpayer's reported revenues and tax liability, and assesses sales tax on any difference.

---

[7]    We have not had occasion to consider the unit volume method of an indirect audit, at least in the context of a contested tax assessment on alcohol sales. The tax court has explained that this method recreates "sales by taking the gross volume of alcoholic beverage purchased by the bar from the wholesalers (which is a verifiable amount) and calculating the number of individual drinks that would be sold from that gross volume." *New Corner Bar, Inc. v. Comm'r of Revenue*, No. 7221-R, 2001 WL 1007811, at *5 (Minn. T.C. Aug. 29, 2001). After determining the average "size of the alcoholic drink pour per serving," and making an allowance for spillage and waste, the number of drinks that could be sold from the resulting volume is "multiplied by the sales price of the drinks to get total sales from alcoholic beverages." *Id.*

12

The tax court rejected the Commissioner's argument that she has the authority to conduct an indirect audit whenever it is reasonable to do so, concluding instead that an indirect audit is permissible only when it would be impossible to conduct a direct audit as, for example, when the taxpayer produces no books and records to audit. *Conga Corp.*, 2014 WL 1711795, at \*17. For the reasons that follow, we reject the tax court's narrow view of the Commissioner's authority to use an indirect audit to assess taxes.

Minnesota Statutes § 270C.31, subd. 1, provides that the Commissioner has the authority to audit a taxpayer to determine, among other things, the accuracy of a return. The statute does not identify any particular audit method for that purpose, nor does the language of the statute limit the type of audit that the Commissioner may use to assess taxes. *See also* Minn. Stat. § 270C.04 (2014) (authorizing the Commissioner to "use any and all information in the commissioner's possession, or to which the commissioner has access, to insure equal and consistent application and enforcement of all state revenue laws"). We read Minn. Stat. § 270C.31 to provide the Commissioner with the authority to determine the type of audit to be used in a particular case. In many cases a direct audit may be the preferred method to determine the accuracy of a return. But it is not the only auditing method that can be used. An indirect audit is a recognized method to conduct an audit, and depending on the circumstances of the particular audit, may be reasonable. Consequently, the question is when the Commissioner may use an indirect audit method to assess taxes.

In *Holland v. United States*, the United States Supreme Court rejected the opportunity to limit the United States Commissioner of Revenue's use of indirect

13

auditing methods[8] to situations in which "the taxpayer has no books or where his books are inadequate." 348 U.S. 121, 131-32 (1954). The Court noted that the federal government is not bound to accept a taxpayer's returns or records at face value, and is entitled to "look[] beyond the self-serving declarations in a taxpayer's books" in order to determine the correct amount of taxes to be assessed. *Id.* The Court concluded that to protect the revenue system, "the Government must be free to use all legal evidence available to it in determining whether the story told by the taxpayer's books accurately reflects his financial history." *Id.* at 132.

In *F-D Oil Co. v. Commissioner of Revenue*, we considered an indirect audit to be an "alternative method" available to the Commissioner, but left open the question of when that method may be used to calculate taxes owed by the taxpayer. 560 N.W.2d 701, 706 (Minn. 1997). We concluded the Commissioner acted reasonably in using an indirect audit because the business records the taxpayer produced were "inadequate." *Id.* at 707. We also concluded that the taxpayer has the burden of proving the invalidity of the Commissioner's assessment order, which is in accord with the common-law principle of placing the burden on the party who has particular knowledge of the relevant facts. *Id.* We observed that placing the burden on the taxpayer minimizes the possibility that the taxpayer, which is responsible for examining and preparing its own records to meet that burden, will destroy records. *Id.*

---

[8]     Under federal law, the Commissioner of Internal Revenue is authorized to use any audit method that "clearly reflect[s] income" whenever a taxpayer fails to keep adequate books and records or those records do not clearly reflect the taxpayer's income. 26 U.S.C. § 446(b) (2012); Treas. Reg. § 1.446-1(b)(1) (1960).

Our decision in *F-D Oil Co.* confirms that the burden to maintain and provide adequate, complete, accurate, and reliable records rests on the taxpayer, which has the particular knowledge of the relevant facts and access to the records that verify those facts. This is consistent with the Legislature's directive that "all gross receipts are [presumed] subject to [] tax," and the burden of proving otherwise "is on the seller." Minn. Stat. § 297A.665(a)(1)-(b) (2014). Indeed, the Commissioner has adopted rules that require the taxpayer to maintain "adequate and complete records" showing gross receipts from sales, all deductions, and the total purchase price of all sales or purchases. Minn. R. 8130.7500, subp. 6 (2013). Given these obligations, when a taxpayer fails to produce for audit adequate and complete records that allow for an accurate and reliable direct audit, the Commissioner may decide that an indirect audit is a reasonable method to determine the accuracy of the taxpayer's returns and tax liability.

We conclude that when the taxpayer fails to produce adequate and complete books and records for audit, or the taxpayer's books and records are not accurate or reliable, the Commissioner has the statutory authority to conduct, and is justified in using, an indirect audit to assess taxes. Our conclusion rests on the premise that the taxpayer has the burden of maintaining adequate and complete records and making those records available for audit, and that when the taxpayer fails to satisfy that responsibility, the Commissioner may use an indirect audit to assess taxes. We recognize that in most cases the Commissioner should use a direct audit to assess taxes because that method relies on the taxpayer's existing records, which are typically the best evidence of the taxpayer's revenues and expenses. But when the taxpayer fails to produce adequate and complete

15

records for audit or the Commissioner determines that the records produced for audit are not accurate or reliable, an indirect audit allows the Commissioner to determine the accuracy of a return, fix tax liability, and administer the revenue laws as part of the tax assessment process.

C.

The Commissioner next argues the tax court erred by concluding an indirect audit constitutes a "statistical or other sampling technique[]" within the meaning of Minn. Stat. § 270C.03, subd. 1(3), and therefore must be conducted in accordance with "generally accepted auditing standards." Conga counters that an indirect audit constitutes a "statistical or other sampling technique[]."

The Commissioner's indirect audit used the unit volume method to reconstruct 100 percent of Conga's sales for 2008. Specifically, the Commissioner reconstructed total sales from invoices provided by vendors who sold alcohol to the taxpayer; deducted amounts for waste, spillage, and other uses based on information provided by Conga; and then for the remaining net volume of alcohol, divided those purchases by drink sizes and prices based on information provided by Conga to determine total sales for 2008.

The tax court concluded that an indirect audit is a "statistical or other sampling technique" within the meaning of Minn. Stat. § 270C.03, subd. 1(3), and therefore can be used only if "consistent with generally accepted auditing standards." *Conga Corp.*, 2014 WL 1711795, at *15. The tax court reasoned that an indirect audit relies on examination of something other than the taxpayer's records to make inferences about the taxpayer's business, and therefore is a "statistical or other sampling technique." *Id*. The tax court

16

acknowledged that during closing argument both parties disagreed with this determination. *Id.* at \*15 n.5.

Section 270C.03, subdivision 1(3), states the Commissioner has the power and duty to "use statistical or other sampling techniques consistent with generally accepted auditing standards in examining returns or records and making assessments." The phrase "statistical or other sampling technique[]" is not defined in Minn. Stat. ch. 270C (2014). But the phrase clearly contemplates a technique used in the course of a tax audit—a process in which the auditor takes a sample of information from the books and records furnished by the taxpayer to test whether the sample is statistically representative of the entire population and can be extrapolated to the entire population, subject to the inherent limitations of sampling. *See, e.g.*, *Utah v. Evans*, 536 U.S 452, 467 (2002) (describing sampling as "selecting and observing a part (sample) of the population in order to make inferences about the whole population") (quoting L. Kish, Survey Sampling 26 (1965)). The purpose of statistical or other sampling techniques is "to provide a reasonable basis for the auditor to draw conclusions about the population from which the sample is selected." 1 Am. Inst. of Certified Pub. Accountants, *Professional Standards*, AU-C § 530.04 (2014).

The IRS manual describes sampling techniques in its manual as a "valuable examination tool[] where effective use of resources makes it uneconomical to audit voluminous accounting data." I.R.M. 4.47.3.1(2). The IRS manual further explains:

> Statistical sampling should be considered whenever a group of accounting entries or transactions has sufficient adjustment potential to warrant examination, but the examination of the totality of all such transactions is

17

> prohibitive in terms of time and resources. In any audit situation where it is reasonable to examine 100 percent of the items under consideration, statistical sampling techniques should not be used.

*Id.* § 4.47.3.3(2).

The plain and ordinary meaning of the phrase "statistical or other sampling technique[]" in subdivision 1(3), as applied here, is a technique in which a representative sample is taken from the taxpayer's records and extended to determine whether the sample is statistically representative of the sales at issue, and whether that sample provides a reasonable basis for the auditor to draw conclusions about taxable revenues based upon that sampling. Thus, the technique may allow an auditor to save time and resources, particularly when complete records are unavailable or unreliable, by examining a small, statistically representative sample of the taxpayer's records. *See, e.g., Wybierala v. Comm'r of Revenue*, 587 N.W.2d 832, 834 (Minn. 1998) (explaining that a "statistical method" had been used to "project the total 'sales tax' that had been collected" because "sufficient records were not supplied for [the] taxable years" at issue). An indirect audit, however, does not take a representative sample to verify that the sample is consistent with taxable revenue or income; instead, the indirect audit reconstructs the taxpayer's records through other records, as an alternative means of calculating total taxable income or revenues.

We conclude that an indirect audit is not a "statistical or other sampling technique[]" within the meaning of Minn. Stat. § 270C.03, subd. 1(3).[9] Consequently, the tax court erred by concluding that an indirect audit using the unit volume method is a "statistical or other sampling technique[]" subject to generally accepted auditing standards.

D.

Having determined that the Commissioner's audit decisions are subject to review under Minn. Stat. § 271.06, and the indirect audit method is not a statistical or sampling technique, we next examine whether the Commissioner's decision to use an indirect audit based on the unit volume method is supported by the record. *See* Minn. Stat. § 271.10, subd. 1 (2014). The tax court concluded that the Commissioner's decision in this case to conduct an indirect audit was not supported by substantial evidence. *Conga Corp.*, 2014 WL 1711795, at *22. But that conclusion rested upon the tax court's erroneous legal determinations that the Commissioner's audit decisions are subject to review under Minn. Stat. § 14.69, and that an indirect audit is only permissible when the taxpayer's books and records are nonexistent. *See Conga Corp.*, 2014 WL 1711795, at *17.

The tax court found that Conga had no records and did not produce for audit any records for 2007. The parties also stipulated that for the tax periods between 2007 and

---

9    Because we conclude that an indirect audit is not a "statistical or other sampling technique[]," we do not address the tax court's determination that auditing standards adopted by the American Institute of Certified Public Accountants are relevant to the Commissioner's audit decision or the audit method used. We note, however, that nothing in section 270.03 incorporates or adopts the AICPA standards the tax court used.

2010: (1) Conga did not record cash it received from cover charges in its POS system; (2) Conga did not deposit all revenues received from cover charges into its corporate bank account; (3) Conga's owner commingled his personal funds with corporate funds, and used the corporate bank account to pay personal expenses; and (4) Conga's 2008 bank statements showed that Conga had deposited at least $61,913.13 more than the gross receipts reported on its sales tax returns.

We conclude that the Commissioner's decision to use an indirect audit to assess taxes was supported by the record. The Commissioner presented evidence that the records Conga produced for audit were inadequate, incomplete, inaccurate, or unreliable. We recognize that Conga produced some records, but the taxpayer has the burden of producing adequate and complete records to support its tax returns. *See* Minn. Stat. § 297A.665 (a)-(b). Here, Conga failed to produce records for 2007, failed to record cash receipts from cover charges, commingled business and personal funds, and presented bank statements that showed deposits in excess of the gross receipts reported on the sales tax returns. This evidence amply supports the Commissioner's determination that the records produced by the taxpayer were not adequate and complete, and were not accurate or reliable. Consequently, the Commissioner's decision to use an indirect audit to assess taxes on Conga is supported by the record.

## II.

Finally, we examine whether the tax court's reversal of the Commissioner's assessment order is supported by the record. The tax court concluded even if the Commissioner's use of the indirect audit was proper that Conga overcame the prima facie

20

validity of the Commissioner's assessment order, and therefore "the burden shift[ed] back to the Commissioner to produce evidence in support of [the] assessment." *Conga Corp.*, 2014 WL 1711795, at *25. The tax court reasoned that the Commissioner offered no additional evidence other than the assessment order and failed to satisfy her burden of proof, and therefore reversed the Commissioner's assessment order. *Id.* We disagree.

Minnesota Statutes § 271.06, subd. 6, provides that an appeal to the tax court to set aside or modify the Commissioner's order is an original proceeding that is conducted de novo. The Commissioner's order or determination is "prima facie valid," and is dispositive in the absence of evidence rebutting it. *Id.*; *see also* Minn. Stat. § 270C.33, subd. 6 (2014); *Buettner v. City of St. Cloud*, 277 N.W.2d 199, 204 (Minn. 1979). The presumptive validity of the assessment order imposes on the taxpayer the burden of going forward with evidence to rebut or meet the presumption. *S. Minn. Beet Sugar Coop v. Cty. of Renville*, 737 N.W.2d 545, 558 (Minn. 2007).

When a taxpayer presents substantial evidence that the Commissioner's assessment order is invalid or incorrect, the presumption of validity is overcome, and the case is "decided by the trier of fact the same as if the presumption had never existed." *See Anderson v. City of Minneapolis*, 258 Minn. 221, 228, 103 N.W.2d 397, 402 (1960) (quoting *Ogren v. City of Duluth*, 219 Minn. 555, 563, 18 N.W.2d 535, 539 (1945)); *accord* Minn. R. Evid. 301 comm. cmt.–1977. The taxpayer, however, continues to bear the burden of proof in the proceeding. *S. Minn. Beet*, 737 N.W.2d at 558; *F-D Oil Co.*, 560 N.W.2d at 707; *Nw. Airlines, Inc. v. Comm'r of Revenue*, 265 N.W.2d 825, 829 (Minn. 1978). The taxpayer retains this burden of proof because the taxpayer is in the

21

best position to produce the records and information relevant to the matter in dispute. *F-D Oil Co.*, 560 N.W.2d at 707; *see also Savig v. First Nat'l Bank of Omaha*, 781 N.W.2d 335, 347 (Minn. 2010) (" '[A]ll else being equal, the burden is better placed on the party with easier access to relevant information.' ") (quoting *In re United Health Grp., Inc. S'holder Derivative Litig.*, 754 N.W.2d 544, 561 (Minn. 2008)).

Once the presumption of validity is overcome, the tax court must examine the evidence presented by both parties and determine "the amount of taxes owed." *S. Minn. Beet*, 737 N.W.2d at 559; *McNeilus Truck & Mfg., Inc. v. Cty. of Dodge*, 705 N.W.2d 410, 413 (Minn. 2005); *Stronge & Lightner Co. v. Comm'r of Taxation*, 228 Minn. 182, 194, 36 N.W.2d 800, 807 (1949). Ultimately, the tax court may conclude that the taxpayer owes the amount of taxes assessed in the Commissioner's order, or owes the amount of taxes contended by the taxpayer, or owes some different amount of taxes. The determination of the amount of taxes owed requires independent support in the record. *S. Minn. Beet*, 737 N.W.2d at 559.

We agree with the tax court that Conga presented substantial evidence that, if believed, could overcome the Commissioner's presumptively valid assessment order. But we are unable to determine whether Conga in fact overcame that presumption for three reasons. First, the tax court's legal error regarding the standard of review for the Commissioner's decision to conduct an indirect audit inhibited a proper, thorough analysis of the Commissioner's audit and the conclusions regarding Conga's total sales, revenues, deductions, and taxable income.

22

Second, in determining that the Commissioner erred in conducting an indirect audit, the tax court improperly shifted the burden of proof to the Commissioner. By doing so the tax court failed to apply the presumption that all sales are taxable, and failed to enforce the taxpayer's burden to prove that any additional sales were not subject to tax, Minn. Stat. § 297.665(a)(1), (6). The tax court also failed to acknowledge the taxpayer's duty to keep adequate and complete records. *See* Minn. R. 8130.7500, subp. 6 (2013). Because we have concluded that the Commissioner's use of an indirect audit to assess taxes was proper, the determinations made using that method regarding Conga's unreported alcohol sales and cover charge revenues are presumptively valid.

Third, the tax court failed to independently weigh the evidence to determine if Conga owes additional taxes. Specifically, when the tax court is presented with conflicting evidence, it must independently review the records to determine the disputed issues and the basis for its conclusions. *See S. Minn. Beet*, 737 N.W.2d at 559. Here, the parties presented conflicting evidence regarding Conga's total sales and revenues, taxable income, and total taxes owed. The tax court erred by failing to assess the evidence presented in order to determine whether Conga's total sales, revenues, and taxable income imposed any additional tax liability.

III.

In sum, we conclude that Minn. Stat. § 271.06, subd. 6, sets forth the legal standard by which the tax court reviews not only the orders of the Commissioner of Revenue, but also the underlying decisions pertaining to that order, and that the legal standard for review in section 271.06, subdivision 6, is separate and distinct from the

23

standard of review applicable to an agency decision under MAPA, Minn. Stat. § 14.69, which does not apply to the tax court's review of the Commissioner's audit decisions.

Additionally, the Commissioner has the authority to use an indirect audit to assess taxes when the taxpayer fails to produce adequate and complete books and records for audit, or the Commissioner determines that the taxpayer's books and records are not accurate or reliable. Moreover, an indirect audit is not a "statistical or other sampling technique[]" within the meaning of Minn. Stat. § 270C.03, subd. 1(3). The audit method therefore is not subject to generally accepted auditing standards. Consequently, the tax court erred by concluding that an indirect audit using the unit volume method is a "statistical or other sampling technique[]" subject to generally accepted auditing standards.

Finally, the Commissioner's decision to use an indirect audit to assess taxes was supported by the record. But the tax court committed legal error by applying an incorrect standard of review, by shifting the burden of proof to the Commissioner, and by failing to independently weigh the evidence to determine whether Conga owes any additional taxes. We therefore conclude that a remand for further proceedings consistent with this opinion is necessary.

The tax court reversed the penalty assessment for tax years 2008-2010, but did not make any findings regarding the penalties assessed in the Commissioner's order. The standards for imposing penalties are set forth in Minn. Stat. § 289A.60, subds. 1(e), 2, 5 (2014). Because we remand this case to the tax court for reconsideration in light of this opinion, we also remand on the issue of penalties.

24

Reversed and remanded.