STATE OF MINNESOTA

IN SUPREME COURT

A15-1847

Tax Court                                                                          Hudson, J.

Michael and Jean Antonello,

            Respondents,

vs.                                                                      Filed:  August 31, 2016
                                                                         Office of Appellate Courts
Commissioner of Revenue,

            Relator.

_____

Thomas E. Brever, Foster Brever Wehrly, PLLC, Saint Anthony, Minnesota, for respondents.

Lori Swanson, Attorney General, Michael Goodwin, Assistant Attorney General, Saint Paul, Minnesota, for relator.

_____

S Y L L A B U S

    1.    The tax court did not abuse its discretion by excluding evidence of a computational error in calculating respondents' tax liability when the evidence was not relevant to the deduction-disallowance issue before the tax court during the summary judgment proceeding.

    2.    The tax court's order was justified by the evidence and in conformity with the law.

    Affirmed.

O P I N I O N

HUDSON, Justice.

This case comes to us after the Minnesota Tax Court granted Michael and Jean Antonello's motion for partial summary judgment, which reversed the Commissioner of Revenue's order disallowing certain charitable-contribution deductions claimed on an income tax return. In doing so, the tax court excluded evidence offered by relator Commissioner of Revenue regarding a computational error made in calculating the Antonellos' tax liability. The Commissioner now seeks review of the tax court's decision to grant the Antonellos' summary judgment motion without also correcting their tax liability to account for the Commissioner's computational error. We must decide whether the tax court erred in excluding the evidence of that error. Because we conclude the tax court did not abuse its discretion in excluding the Commissioner's evidence of a computational error and the evidence properly before the tax court supports the tax liability imposed, we affirm.

The Antonellos jointly filed federal and state individual income tax returns for tax year 2006, claiming deductions of $3,847,644 for charitable contributions. Four contributions, totaling $500,000, were made to the MacPhail Center for Music based on the Antonellos' written pledge to donate $1.5 million for the construction of a new music building.

On February 16, 2011, the Minnesota Department of Revenue notified the Antonellos that their 2006-2009 Minnesota income tax returns had been selected for

2

review; the Department requested substantiation of the charitable-contribution deductions claimed in those returns. Following an audit, the Department disallowed all of the claimed 2006 charitable-contribution deductions, which increased the Antonellos' taxable income by $2,873,742 to a total of $5,674,390, resulting in a total tax liability of $276,418. The Antonellos filed an administrative appeal of the audit order under Minn. Stat. § 270C.35, subd. 1 (2014), which allows a taxpayer to obtain reconsideration by the Commissioner of an order assessing taxes.

During the administrative appeal, the Antonellos provided the appeals officer with documents to substantiate the claimed charitable-contribution deductions. On July 13, 2012, the Commissioner issued a Notice of Determination on Appeal ("Determination"), which explained that "[a]t issue" was the decision "to disallow the cash charitable contributions claimed" on the Antonellos' 2006 tax return. After reviewing the Antonellos' documentation, the Commissioner allowed deductions for some of the charitable contributions originally claimed, but disallowed the deductions for the MacPhail contributions based on a lack of substantiation.[1] Based on these decisions, the

---

[1]    The Determination included a spreadsheet detailing each contribution claimed, whether a deduction for the contribution was allowed or disallowed, the deductibility limit, and notes regarding the Commissioner's action with respect to each contribution. Although the Commissioner allowed deductions for contributions made to the Antonello Family Foundation, the charity was re-categorized as a "30% Limit Organization," thereby restricting the amount the Antonellos could claim as a deduction.

The Antonellos maintain that this re-categorization was a new issue raised for the first time before the tax court. The spreadsheet, however, conclusively shows that the re-categorization properly occurred during the administrative appeal process. The issue

Commissioner determined that the Antonellos owed $15,993 before interest for the 2006 tax year, and assessed this liability.[2]

Pursuant to Minn. Stat. § 271.06, subd. 1 (2014), the Antonellos filed a Notice of Appeal with the Minnesota Tax Court, stating that "[t]he Department erroneously disallowed charitable contributions made pursuant to a pledge to a qualified charity." In a Joint Statement of the Case later filed with the tax court, the parties identified one issue for the tax court's resolution: whether the Antonellos "me[t] the substantiation requirements imposed by the Internal Revenue Code for [the disallowed] charitable contributions claimed as deductible on their 2006 tax return." The Commissioner notified the tax court that the Commissioner anticipated "bringing a summary judgment motion regarding whether the substantiation provided" by the Antonellos met the "requirements of the Internal Revenue Code." Some months later, both parties filed partial summary judgment motions addressing the disallowance of the MacPhail deductions.

In preparing the motion for summary judgment, the Commissioner discovered that the tax liability assessed in the 2012 Determination, $15,993 before interest, was miscalculated "due to a transposition of numbers." Specifically, in calculating the amount

---

before us, then, is whether the tax court abused its discretion in excluding evidence of the computational error, and not whether the Commissioner erred in re-categorizing the legal status of the Foundation.

[2]    The Commissioner's Determination represents an assessment imposing a tax liability. Minn. Stat. § 270C.33, subd. 4 (a)(1) (2014) ("The commissioner may issue an order of assessment [when] the commissioner determines that the correct amount of tax is different than that assessed on a return filed with the commissioner.").

4

of tax the Antonellos owed based on the allowances and disallowances made in the administrative appeal, the Department explained that it incorrectly used the "Net change" in taxable income reported in the audit ($2,873,742) instead of the corrected Minnesota taxable income ($5,674,390). The Department also failed to deduct from the amount owed the $147,251 paid by the Antonellos when they filed their 2006 tax return. Thus, because the calculations began with the wrong income figure and failed to account for previous payments made, the tax liability assessed in the Determination was incorrect.

In her summary judgment motion, the Commissioner explained that, calculated correctly, the Antonellos owed $88,592 if the contested MacPhail deductions were disallowed, or $49,327 if the MacPhail deductions were allowed. The Commissioner asked the tax court to grant summary judgment "holding the disallowance of charitable deductions . . . was proper" and determine "that the amount of tax owed by [the Antonellos] as a result of the disallowance" was $88,592 before interest. The Antonellos objected to the Commissioner's attempted modification of her own order, arguing that under Minn. Stat. § 271.06, subd. 5 (2014), the Commissioner could not modify her own order absent their consent.

The tax court granted the Antonellos' motion for partial summary judgment and allowed the MacPhail deductions. In doing so, the tax court excluded from its consideration the Commissioner's evidence of the computational error, concluding that the taxpayers' "appeal of a single, discrete issue" did not "allow the Commissioner to present evidence concerning any *other* issues [] considered necessary" to a resolution of the appeal.

5

Because the only issue the Antonellos appealed was the denial of "certain of their charitable contribution deductions," namely the MacPhail contributions, the tax court concluded "the Commissioner fail[ed] to show that his miscalculation of appellants' tax liability [was] properly before [the court]." Though the tax court recognized that the Commissioner's recalculation was correct, it concluded that the Commissioner's Determination could be modified only if the Antonellos' actual tax liability was less than the amount assessed in the Determination.

On August 31, 2015, after agreeing that no other charitable-contribution deductions were disputed, the parties stipulated that the Antonellos' tax liability was at least $15,993 before interest. The tax court entered judgment based on the parties' stipulation. The Commissioner now seeks review of the tax court's determination that the Antonellos' total tax liability, after allowing the MacPhail deductions, is $15,993.

We review the tax court's decision to determine whether: "(1) the tax court had jurisdiction; (2) the tax court's decision was supported by the evidence and was in conformity with the law; and (3) the tax court committed any other error of law." *Conga Corp. v. Comm'r of Revenue*, 868 N.W.2d 41, 46 (Minn. 2015) (citing Minn. Stat. § 271.10, subd. 1 (2014)). We review the tax court's conclusions of law and interpretation of statutes de novo, *Eden Prairie Mall, LLC v. Cty. of Hennepin*, 830 N.W.2d 16, 20 (Minn. 2013), and its findings of fact for clear error, *Conga Corp.*, 868 N.W.2d at 46. Our review of a tax court's final decision is limited and deferential. *Singer v. Comm'r of Revenue*, 817 N.W.2d 670, 674 (Minn. 2012).

The Commissioner asserts that the tax court erred in failing to correct the Antonellos' tax liability by using the corrected tax computations to modify the Determination. In the alternative, the Commissioner argues that the undisputed facts in the record demonstrate that the Antonellos' tax liability was greater than $15,993, and therefore the tax court's order is not justified by the evidence and is not in conformity with the law. We address each argument in turn.

I.

The Commissioner first argues that the tax court erred in holding that it was without authority to use the Commissioner's corrected computations to determine the Antonellos' tax liability. The Commissioner asserts that Minn. Stat. §§ 271.05–.06 (2014) grant the tax court broad authority to "review and redetermine orders or decisions of the commissioner of revenue," including the power to "set aside or modify" a determination on appeal. Citing *Conga Corp.*, 868 N.W.2d at 47, the Commissioner contends that the tax court's de novo standard of review extends not only to review of the Commissioner's order on appeal, but also to review of the "underlying decisions reflected in that order." Thus, the Commissioner argues, the tax court must independently examine the evidence presented by both parties and then determine the correct amount of tax owed. For their part, the Antonellos maintain that the tax court properly determined their tax liability based

7

on the Commissioner's assessment in the Determination because the computational error was not raised until the summary judgment stage of the tax court proceeding.[3]

The parties frame this dispute as a question of the tax court's "jurisdiction" or "authority" to modify the Commissioner's order. The tax court has the authority to "review and redetermine" the Commissioner's order when an appeal is taken from such order. Minn. Stat. § 271.05. The question presented by this appeal is whether the tax court was required to consider the evidence of the Commissioner's computational error simply because it was offered to the tax court. *See* Minn. Stat. § 271.06, subd. 6 (stating that the parties to an appeal before the tax court "have an opportunity to offer evidence and arguments" to the court).

The setting in which the Commissioner offered evidence of the computational error was a motion for summary judgment that asked the tax court to resolve a single legal question: whether the Commissioner "correctly disallow[ed] the deductions claimed by [the Antonellos] for contributions to MacPhail." Summary judgment is a procedure that permits judgment to be entered if there is "no genuine issue as to any material fact." Minn. R. Civ. P. 56.03. "The substantive law identifies which facts are material," *Bond v. Comm'r of Revenue*, 691 N.W.2d 831, 836 (Minn. 2005), and the decision to exclude

---

[3] The Antonellos also argue that by asking the tax court to impose a greater tax liability than the amount assessed in the Commissioner's Determination, the Commissioner attempts to assert a counterclaim or appeal from her own order. According to the Antonellos, this is not permissible under the statutes governing the appeal process. *See* Minn. Stat. § 271.06. Because we conclude that the tax court did not abuse its discretion in concluding that the computational error was not properly before the court, we need not address these arguments.

evidence from consideration in deciding a summary judgment motion will not be disturbed absent an abuse of discretion. *See Doe v. Archdiocese of St. Paul*, 817 N.W.2d 150, 164 (Minn. 2012) (stating, in considering whether summary judgment was improperly granted after excluding certain expert evidence, "[w]e review a district court's evidentiary rulings . . . for an abuse of discretion"). A "material" fact for purposes of summary judgment is a fact that, once resolved, will affect the outcome of the case. *Bond*, 691 N.W.2d at 836 (quoting *Zappa v. Fahey*, 310 Minn. 555, 556, 245 N.W.2d 258, 259-60 (1976)).

The tax court determined that the evidence regarding the Commissioner's computational error was outside the "scope" of its review and that the Commissioner did not demonstrate that the accuracy of the Commissioner's mathematical calculations was properly before the tax court. We understand the tax court's explanation to reflect a decision to exclude evidence from consideration that was presented to the court in the course of summary judgment proceedings that led to a determination that the Antonellos' tax liability was $15,993. Thus, we consider whether the tax court erred in excluding the evidence. *See, e.g., Doe*, 817 N.W.2d at 163 (stating the court "may affirm a grant of summary judgment if it can be sustained on any grounds").

The only issue raised in the Notice of Appeal the Antonellos filed with the tax court was whether the Commissioner erred in disallowing their claimed charitable-contribution deductions. In their Joint Statement of the Case, the only issue the parties identified as before the tax court was whether the Antonellos met the IRS's substantiation requirements

9

for charitable-contribution deductions.[4]  Finally, the sole issue the parties identified in their respective summary judgment motions was whether the Commissioner properly disallowed the charitable-contribution deductions.  Resolution of this single issue, the tax court correctly recognized, required consideration of federal laws that allow deductions for charitable contributions "only if verified under regulations prescribed by" the IRS.  *See* 26 U.S.C. § 170(a)(1) (2012).  After excluding consideration of the Commissioner's computational error, the tax court concluded "the various documents MacPhail sent to [the Antonellos] . . . satisfy the contemporaneous written acknowledgement substantiation requirement of" the federal regulations.  The Commissioner does not challenge this determination in the appeal to our court.  Nor does she argue that the evidence of her computational error was relevant to the Antonellos' ability to demonstrate that they satisfied "the contemporaneous written acknowledgment substantiation requirement."  Her only argument is that the tax court erred in failing to consider the evidence she offered of a computational error *after* the tax court had resolved the legal question presented by the Antonellos' appeal.  We do not agree.

The decision whether to exclude evidence rests with the tax court, "and the ruling will not be disturbed absent indications of an erroneous legal view or abuse of discretion." *TMG Life Ins. Co. v. Cty. of Goodhue*, 540 N.W.2d 848, 851 (Minn. 1995).  Once the tax court resolved the deduction issue in the Antonellos' favor, no material facts remained to

---

[4]     In Minnesota, qualified charitable contributions are allowable as deductions by the Internal Revenue Service.  Minn. Stat. § 290.01, subd. 19b(6) (2014); *see* 26 U.S.C. § 170(a)(1) (2012).

be considered regarding their tax liability for purposes of summary judgment. *See Bond*, 691 N.W.2d at 836. The evidence of the Commissioner's computational error was, in other words, irrelevant to the issue that the Antonellos appealed. *See* Minn. R. Evid. 103(a).

The Commissioner argues that the Antonellos placed *the amount* of their tax liability at issue in their Notice of Appeal when they "squarely placed all issues regarding their charitable deductions before the Tax Court." Relying on our decision in *Conga Corp.*, 868 N.W.2d 41, the Commissioner argues that because the Antonellos' ultimate tax liability and the calculations made to identify that liability are an "underlying decision" in her order, the tax court should have considered whether the Antonellos' tax liability was correct once the legal issue regarding their claimed deductions was resolved. *See Conga Corp.*, 868 N.W.2d at 47 (holding that the standard of review provided in Minn. Stat. § 271.06, subd. 6, "applies to the Commissioner's underlying decisions reflected in" the appealed order). The Commissioner stretches our holding in *Conga Corp.* too far.

In *Conga Corp.*, the underlying decision challenged on appeal was the Commissioner's decision to use a particular audit method, specifically an "indirect audit," to determine the amount of tax Conga owed. *Id*. at 46. The challenge to the Commissioner's use of an indirect audit was explicitly raised in Conga's notice of appeal to the tax court, where Conga argued that "the Commissioner's decision to use an indirect audit was improper and therefore the assessment was invalid." *Id*. at 45. Here, no one challenged the accuracy of the Commissioner's mathematical calculations until the Commissioner moved for summary judgment. In other words, the parties did not identify

11

a link between the disallowance of the charitable-contribution deductions and the computational error. Our decision in *Conga Corp.* does not compel a review of the Department's calculations of the Antonellos' tax liability simply because at some point in the appeal the Commissioner asked the tax court to do so.

The Commissioner also relies on our decision in *Eden Prairie Mall, LLC v. County of Hennepin*, 797 N.W.2d 186 (Minn. 2011), in which we recognized the authority of the tax court to increase a property-tax valuation on appeal from an administrative determination. In *Eden Prairie Mall*, 797 N.W.2d at 193, however, such an increase was explicitly allowed by statute, *see* Minn. Stat. § 278.05, subd. 1 (2014), and the market value of the property was the sole issue on appeal to the tax court. Here, the sole issue before the tax court was the disallowance of certain charitable-contribution deductions. The tax court did not abuse its discretion in refusing to consider evidence that was not material to that issue.[5]

---

[5] The Commissioner also relies on *HBM Servs., Inc. v. Comm'r of Revenue*, No. 8004, 2011 WL 2200596 (Minn. T.C. July 15, 2010); *Artistic Drapery Servs., Inc. v. Comm'r of Revenue,* No. 7954 R, 2009 WL 1585854 (Minn. T.C. June 3, 2009); and *Higgins v. Comm'r of Revenue*, Nos. 6734, 6735, 6733, 1997 WL 428064 (Minn. T.C. July 28, 1997), to argue that the tax court has the authority to correct the Commissioner's computational errors. These decisions are not binding on us, *A&H Vending Co. v. Comm'r of Revenue*, 608 N.W.2d 544, 546 (Minn. 2000), and in each case, re-computation of the tax liability was based on evidence at trial that resulted in a *decrease* in the liability assessed in the order on appeal, *see HBM Servs., Inc.*, 2011 WL 2200596 at *1-2 (explaining the decrease from assessment to tax court's conclusions on appeal), or was by agreement of the parties, *Higgins*, 1997 WL 428064 at *3 ("We . . . leave the correction [of any mathematical error] to the parties.").

Finally, the Commissioner argues that excluding evidence of the computational error allows "the taxpayer to keep the amount of tax owed out of the Tax Court's scope of review," which makes the tax court "a vehicle only for the benefit of" the taxpayer. The Commissioner also argues that the public interest is best served only when taxpayers pay the correct amount of tax owed. We agree that the public interest is best served by accuracy in the administrative process of assessing and paying taxes. But in this particular case, the taxpayer did not prevent the tax court from considering the amount of tax owed. That result was dictated by issues the parties raised and by the tax court's decision on an evidentiary matter that fell within the tax court's discretion in resolving the parties' motions for summary judgment.

In sum, the tax court did not abuse its discretion by disregarding evidence of a computational error in calculating the tax liability when that evidence was not relevant to the legal issue before the tax court during the summary judgment stage of the proceeding.[6]

## II.

The Commissioner next contends that the tax court's order, which affirmed the original assessment of $15,993 tax before interest, is not justified by the evidence or in conformity with the law. The Commissioner argues that she produced undisputed evidence

---

[6]    Because we conclude that the tax court, in this instance, did not abuse its discretion in disallowing evidence of the computational error at the summary judgment stage, we need not reach the issue of whether an increase in tax liability would have violated the applicable statute of limitations.

13

in her motion for summary judgment that the Antonellos' income tax liability for 2006 was $49,327 before interest if, as the tax court decided, the MacPhail deductions were allowed.

We review a tax court's finding of fact for clear error, and will sustain that finding if it is "reasonably supported by the evidence as a whole." *Turner v. Comm'r of Revenue*, 840 N.W.2d 205, 208 (Minn. 2013) (quoting *Cont'l Retail, LLC v. Cty. of Hennepin*, 801 N.W.2d 395, 398 (Minn. 2011)). In other words, we defer to the tax court's factual findings unless we have a "firm conviction that a mistake has been made." *Krech v. Comm'r of Revenue*, 557 N.W.2d 335, 338 (Minn. 1997). An assessment made by the Commissioner enjoys a presumption of validity and the taxpayer bears the burden of establishing that the assessment is incorrect. Minn. Stat. § 270C.33, subd. 6 (2014). Even when the presumption of an assessment's validity is overcome, the burden remains with the taxpayer to prove the correct amount of taxes owed. *Conga Corp.*, 868 N.W.2d at 53.[7]

The tax court's judgment against the Antonellos for $15,993 plus interest is justified by the evidence that was properly before the tax court. *See Red Owl Stores, Inc. v. Comm'r of Taxation*, 264 Minn. 1, 10, 117 N.W.2d 401, 407 (1962) (stating the tax court is limited in its review to "all the testimony determinative of the issues before it."). The tax court's order is consistent with the Commissioner's Determination. As discussed above, the tax court did not abuse its discretion by excluding evidence of the Commissioner's

---

[7] This case is markedly different from most tax appeals. The Commissioner has come forward with information regarding a Department error, thus effectively challenging the presumption of validity accorded to her own order, even though in her Answer to the Antonellos' Notice of Appeal, the Commissioner alleged that her order "is correct."

14

recalculation of the Antonellos' tax liability that came during summary judgment proceedings.

The tax court's finding regarding the Antonellos' tax liability is supported by the record. The Commissioner's Determination is "an Official Order of the Commissioner of Revenue" that "supersede[d] the prior notice" the Antonellos received following the audit. This Determination was "final when made" and presumptively valid. Minn. Stat. § 270C.33, subds. 4(d), 6. This Determination therefore enjoys a presumption of validity; indeed, the Determination itself attests that "[t]he commissioner's order of assessment is correct and valid." The tax court affirmed "the amount of taxes assessed in the Commissioner's order," *Conga Corp.*, 868 N.W.2d at 53, as it is allowed to do under our case law, and entered the relief requested in the parties' stipulation. The tax court's decision is therefore justified by the evidence and in conformity with Minnesota law.

Affirmed.