**EDEN PRAIRIE MALL, LLC, Relator,**

v.

**COUNTY OF HENNEPIN, Respondent.**

No. A12–0542.

Supreme Court of Minnesota.

April 24, 2013.

---

Thomas R. Wilhelmy, Judy S. Engel, Fredrikson & Byron, P.A., Minneapolis, MN, for relator.

Michael O. Freeman, Hennepin County Attorney, Lisa C. Hahn–Cordes, Assistant County Attorney, Minneapolis, MN, for respondent.

## OPINION

DIETZEN, Justice.

This case is before us to determine whether the Minnesota Tax Court followed our remand instructions in *Eden Prairie Mall, LLC v. County of Hennepin* (*EPM I* ), 797 N.W.2d 186, 192–200 (Minn.2011). Originally, relator Eden Prairie Mall, LLC

(EPM) sought certiorari review of the tax court's market value determinations for the Eden Prairie Mall and one of its anchor tenants, for the assessment dates January 2, 2005 and January 2, 2006. The tax court adopted the market values for the mall parcel proposed by respondent Hennepin County in its post-trial brief, which were higher than the value opinions presented by either party's appraiser at trial. On appeal, we concluded that the tax court's value determinations for the mall were not supported by the record. We remanded to the tax court with instructions to explain its reasoning and describe the factual support in the record for its determinations. On remand, the tax court adopted market values that exceeded its earlier determinations in *EPM I.* Because we conclude that the tax court failed to follow our remand instructions when it determined the overall capitalization rates, we reverse.

EPM owns and operates the Eden Prairie Mall, a super-regional shopping center located in Eden Prairie.[1] Included in the mall parcel for property tax purposes are the mall's in-line tenants, five anchor tenants, and an AMC movie theater complex.[2] The County Assessor estimated the market value of the mall as of January 2, 2005 at $90,000,000, and as of January 2, 2006 at $100,000,000. EPM filed a petition under Minn.Stat. § 278.01, subd. 1 (2012), claiming that the mall had been assessed at values greater than its actual market values, and that it had been unfairly and unequally assessed.

At trial, both parties introduced expert appraisal reports and testimony regarding the mall's market value. EPM presented the appraisal testimony of David C. Lennhoff, who testified that the market value of the mall was $68,750,000 for 2005 and $60,550,000 for 2006. The County presented the appraisal testimony of Jason L. Messner and appraisal review testimony of Mark T. Kenney. Messner testified that the market value of the mall was $110,000,000 for 2005 and $115,000,000 for 2006.

In its post-trial brief, the County argued that the EPM appraiser's revenue and expense assumptions were unsupported by the record. Instead, the County proposed recalculating the EPM appraiser's value determinations using different revenue and expense figures. The effect of the different assumptions was to substantially increase the EPM appraiser's value determinations to $122,876,142 for 2005 and $120,142,410 for 2006. The tax court adopted, nearly verbatim, those value determinations. *Eden Prairie Mall, LLC v. Cnty. of Hennepin,* Nos. 27–CV–06–04210, 27–CV–06–04212, 27–CV–07–08003, 27–CV–07–08004, 2009 WL 3335630, at *5 (Minn. T.C. Oct. 13, 2009).

On appeal, we concluded, among other things, that the tax court's nearly verbatim adoption of the County's proposed value determinations articulated in its post-trial brief—which were significantly higher than either party's appraisal opinions and reflected several mathematical errors—suggested that the tax court "failed to exercise its own skill and independent

---

1. A more detailed description of the factual background and appraisal testimony presented at trial may be found in *EPM I,* 797 N.W.2d at 187–89. We recite only those facts necessary to decide the dispute before us.

2. One of the anchor tenants, Von Maur department store, is located on a parcel leased from EPM that is separately assessed for tax purposes. We upheld the tax court's market value determinations for the Von Maur parcel in *EPM I,* 797 N.W.2d at 199, and the parties agree that parcel is not at issue in this appeal. Thus, references in this opinion to the "mall" or the "mall parcel" do not include the Von Maur parcel.

judgment." *EPM I*, 797 N.W.2d at 192. Accordingly, we remanded to the tax court with instructions "to adequately explain the reasons for the value determinations and to describe in detail the evidence upon which it relies to support its determinations." *Id.* at 200. We also indicated that the tax court could reopen the record and conduct a further evidentiary hearing "if necessary." *Id.*

On remand, the tax court elected not to conduct an evidentiary hearing, but did permit the parties to submit additional briefing. After receiving memoranda from both parties, the court issued its order, which increased the mall's 2005 assessed value from $90,000,000 to $127,000,000, and its 2006 assessed value from $100,000,000 to $127,500,000. *Eden Prairie Mall, LLC v. Cnty. of Hennepin*, Nos. 27–CV–06–04210, 27–CV–07–08003, 27–CV–06–04212, 27–CV–07–08004, 2012 WL 360453, at *5–6 (Minn. T.C. Jan. 25, 2012).

A summary of the County's assessed values, the parties' appraisal opinions, and the tax court's value determinations in both of its orders is as follows:

| Assessment Date | County Assessor | EPM Appraiser | County Appraiser | Tax Court in EPM I | Tax Court on Remand |
|---|---|---|---|---|---|
| January 2, 2005 | $ 90,000,000 | $68,750,000 | $110,000,000 | $122,876,000 | $127,000,000 |
| January 2, 2006 | $100,000,00 0 | $60,550,000 | $115,000,000 | $120,142,000 | $127,500,000 |

### I.

EPM argues that the tax court failed to follow our remand instructions. The County responds that the tax court adequately explained its reasoning and described the evidence it relied upon in valuing the mall.

■ Generally, our review of the tax court's decision is limited to determining whether the court had jurisdiction, whether its decision was justified by the evidence and in conformity with law, or whether it committed any other error of law. Minn.Stat. § 271.10, subd. 1 (2012). We review the tax court's legal conclusions de novo, but we defer to the tax court's market value determinations unless they are clearly erroneous. *See Cont'l Retail, LLC v. Cnty. of Hennepin*, 801 N.W.2d 395, 398 (Minn.2011). The tax court's value determinations are clearly erroneous if they are not reasonably supported by the record as a whole. *Equitable Life Assurance Soc'y v. Cnty. of Ramsey*, 530 N.W.2d 544, 552 (Minn.1995). We will not defer to the value determinations if the tax court has clearly misvalued the property or completely failed to explain its reasoning. *Cont'l Retail*, 801 N.W.2d at 399.

■ Similarly, we review the tax court's decision on remand for an abuse of discretion. *See Janssen v. Best & Flanagan, LLP*, 704 N.W.2d 759, 763 (Minn.2005). Although our review is deferential, the tax court must execute our remand order according to its instructions and has no power to modify those instructions. *See Halverson v. Vill. of Deerwood*, 322 N.W.2d 761, 766 (Minn.1982).

In *EPM I*, we remanded the tax court's value determinations for the mall with instructions to explain its reasoning and describe the factual support in the record for its determinations. 797 N.W.2d at 200. We warned that if the tax court fails to follow those instructions, "it runs the risk of having its determination[s] overturned." *Id.* at 194. Specifically, we directed the tax court to reconsider four components of its value determinations: (1) market rents; (2) net operating income; (3) furniture,

fixtures, and equipment; and (4) the overall capitalization rates. 797 N.W.2d at 194–99. We will discuss each component in turn.

### A.

■ EPM argues that the tax court failed to explain its reasoning and describe the factual support in the record when it declined to deduct tenant improvement allowances to arrive at effective market rents. Tenant improvement allowances are rent concessions that provide tenants with financial assistance to construct improvements to the leased space. *See* Appraisal Institute, *The Appraisal of Real Estate* 480 (13th ed.2008). Whether tenant improvement allowances should be deducted from market rents to arrive at effective market rents "must be determined on a case-by-case basis" as part of the overall determination of market rents. *EPM I,* 797 N.W.2d at 196. When an appraiser determines it is appropriate to deduct tenant improvement allowances, the appraiser must decide whether those allowances should be considered an "above-the-line expense" or a "below-the-line expense." *See* Appraisal Institute, *supra,* at 480. An "above-the-line expense" is recorded "above" the net operating income line and is considered part of the total operating expenses for the property. *Id.* In contrast, a "below-the-line expense" is recorded "below" the net operating income line and is not considered part of the total operating expenses for the property. *Id.* Generally, tenant improvement allowances "are the most common line items recorded below the net operating income line." *Id.*

■ The EPM appraiser subtracted tenant improvement allowances from market rents as an above-the-line expense to arrive at effective market rents. The County appraiser, however, opted to consider tenant improvement allowances as a

below-the-line expense by reflecting that expense in his determination of the capitalization rates. He explained that to estimate market value, net operating income should not be adjusted for tenant improvement allowances; instead, the adjustment should be made below the line. .

■ On remand, the tax court adopted the County appraiser's approach. The court explained that the "weight of the evidence presented supports [the County appraiser], who was most credible and persuasive in his testimony." We defer to the credibility determinations of the tax court. *See Hansen v. Cnty. of Hennepin,* 527 N.W.2d 89, 94–95 (Minn.1995) (stating that "the tax court is wholly capable of assessing the weight of conflicting expert testimony and reaching an intelligent conclusion"). Thus, we conclude that the tax court did not abuse its discretion in determining market rents.

### B.

■ EPM next argues that the tax court failed to explain its reasoning and describe the factual support in the record for its determination of net operating income. In *EPM I,* we directed the tax court to explain why it concluded that market rents and net operating income were higher than the amounts testified to by either party's appraiser, and to describe the factual support in the record for its determinations. 797 N.W.2d at 196–97. We also directed the tax court to address whether changing any of the EPM appraiser's revenue assumptions "would impact other revenue and expense assumptions." *Id.* at 197.

The EPM appraiser estimated that effective market rents from the mall's in-line tenants were $8,076,217 for both assessment dates, which, after subtracting expenses, resulted in net operating income of $7,117,082 for 2005 and $6,433,577 for

2006. The County appraiser used actual rents paid for the years prior to the assessment dates, which were $8,856,518 for 2004 and $9,385,935 for 2005. Based on these figures, the County appraiser projected net operating income at $12,210,029 and $12,683,238 for the 2005 and 2006 assessment dates, respectively. On remand, the tax court concluded that actual rents received—$8,856,518 for 2005 and $9,385,935 for 2006—reflected market rents. As a result, the tax court recalculated net operating income to $9,791,599 for 2005 and $9,550,444 for 2006. A summary of the net operating income calculations is as follows:

| Assessment Date | EPM Appraiser | County Appraiser | Tax Court in *EPM I* | Tax Court on Remand |
|---|---|---|---|---|
| January 2, 2005 | $7,117,082 | $12,210,029 | $10,489,410 | $9,791,599 |
| January 2, 2006 | $6,433,577 | $12,683,238 | $ 9,926,670 | $9,550,444 |

It is true the tax court on remand did not explain why it chose actual rents, as opposed to effective market rents in its calculations. But the EPM appraiser testified that the mall was "performing at about market levels" and was "basically leased at market rate." Further, the tax court's final net operating income figures fall within the range of the appraisal testimony. Consequently, we conclude that the tax court did not abuse its discretion because its determinations of net operating income are supported by the record.

### C.

 EPM also argues that the tax court failed to follow our remand instruction to adjust net operating income for the depreciation of furniture, fixtures, and equipment (FF & E). In *EPM I*, we noted that the tax court concluded it was appropriate to adjust net operating income for the return on and of the market value of FF & E, but that the tax court did not actually make the adjustment. 797 N.W.2d at 197. As a result, we remanded to the tax court to make the adjustment. *Id.*

On remand, the tax court reviewed the appraisal testimony to determine the appropriate amount to deduct for depreciation of FF & E to arrive at net operating income. Both appraisers concluded that historical cost should be used to depreciate FF & E. But the County's appraisal reviewer concluded that market value was more accurate, and that use of historical cost "overstates the value of [FF & E]." The tax court concluded that depreciating FF & E based on market value was the most accurate, and adopted the EPM appraiser's FF & E amortization schedule as a "conservative estimate of market value." The court rejected the County appraiser's FF & E amortization schedule because it was higher and therefore likely overstated the value of FF & E.

The tax court's determination is supported by the record. The tax court explained that it found the EPM appraiser's FF & E amortization schedule most accurately reflected the appropriate depreciation of FF & E, and deducted that amount from net operating income. Thus, we conclude that the tax court followed our remand instructions and did not abuse its discretion with regard to its adjustment of net operating income for the depreciation of FF & E.

### D.

 Finally, EPM argues that the tax court failed to explain its reasoning

and describe the factual support in the record for its determination of the overall capitalization rates. The capitalization rate capitalizes a single year's income expectancy into an indication of value. *See* Appraisal Institute, *supra,* at 499. More specifically, the value of an income-producing property can be estimated by dividing the property's net operating income by the capitalization rate. *Id.* at 501. The capitalization rate, which is extracted from market data, requires extensive market research because it is influenced by, among other things, the degree of perceived risk in the investment, market expectations of future inflation, the rates of return earned by comparable properties in the past, and tax law. *Id.* at 463–64, 499–501. In *EPM I*, we concluded that the tax court's determinations of the capitalization rates were "generally supported by the record." 797 N.W.2d at 199. But we observed that a change in the capitalization rate of even a fraction of one percent will significantly change the value determination. *Id.* Thus, we noted that if the "record [was] reopened on remand," the tax court could "revisit the appropriate capitalization rates." *Id.*

 On remand, the tax court fundamentally changed how it loaded the capitalization rates to account for real estate taxes.[3] That change in the capitalization methodology decreased the capitalization rates and, in effect, significantly increased the market values for both assessment dates. For the reasons that follow, we conclude that the tax court's fundamental change in its capitalization methodology is not reasonably supported by the record as a whole and is therefore clearly erroneous.

The EPM appraiser began with a capitalization rate of 8.75% for the 2005 assessment and 8.50% for the 2006 assessment. He then increased these rates with a tax load of 30% of the mall's effective tax rate to reflect that EPM recovered only 70% of its property taxes from tenants during the assessment year, resulting in a tax-loaded capitalization rate of 9.79% for 2005 and 9.85% for 2006. The County appraiser began with a capitalization rate of 7.50% for 2005 and 7.25% for 2006. He then increased these rates with the mall's entire effective tax rate, resulting in a tax-loaded capitalization rate of 10.96% for 2005 and 10.63% for 2006.

In *EPM I*, the tax court adopted the County appraiser's initial capitalization rates, but tax loaded them according to the EPM appraiser's methodology, resulting in tax-loaded capitalization rates of 8.54% for 2005 and 8.26% for 2006. On remand, the County proposed in its reply brief—for the first time in the case—to tax load the capitalization rate using 6% of the effective tax rate, which represents the market vacancy rate, instead of 30%, which represents the percentage of the property-tax burden actually borne by EPM. The tax court adopted the 6% figure, thereby decreasing the tax-loaded capitalization rate to 7.71% for 2005 and 7.47% for 2006.

A summary of the capitalization rate determinations is as follows:

---

3. A "loaded capitalization rate," also known as a tax load, is the adjustment appraisers make to the capitalization rate to reflect the portion of property taxes not passed through to tenants and thus paid by the landlord. *See* Appraisal Institute, *supra,* at 485. Specifically, appraisers may increase the capitalization rate by the proportion of the subject property's effective tax rate for which the landlord itself is liable. *Id.*

| Assessment Date | Item | EPM Appraiser | County Appraiser | Tax Court in *EPM I* | Tax Court on Remand |
|---|---|---|---|---|---|
| January 2, 2005 | Pre–Tax Capitalization Rate | 8.75% | 7.5% | 7.5% | 7.5% |
| | Tax Load (3.46% ETR) | 1.04% | 3.46% | 1.04% | 0.21% |
| | Capitalization Rate | 9.79% | 10.96% | 8.54% | 7.71% |
| January 2, 2006 | Pre–Tax Capitalization Rate | 8.5% | 7.25% | 7.25% | 7.2 5% |
| | Tax Load (3.38% ETR) | 1.35% | 3.38% | 1.01% | 0.22% |
| | Capitalization Rate | 9.85% | 10.63% | 8.26% | 7.47% |

Notably, if net operating income remains constant, the slight decrease in the capitalization rates on remand—0.83% for 2005 and 0.81% for 2006—yields a substantial increase in the market value determinations—$12,158,416, or a 10.76% increase, for 2005; and $12,562,236, or a 10.87% increase, for 2006.[4] Indeed, the tax court valued the mall higher than all of the appraisal testimony in the record.

We conclude that the tax court failed to explain why it fundamentally changed its capitalization methodology or identify supporting appraisal testimony *in the record* for utilizing 6% of the effective tax rate to load the capitalization rate. The EPM appraiser testified that tax loading the capitalization rate with 30% of the effective tax rate was appropriate to adjust for EPM's actual tax liability. The County appraiser adjusted the capitalization rate with the entire effective tax rate. No appraiser testified that 6% was appropriate, or expressed an opinion that the overall capitalization rates should have been 7.71% and 7.47%.

The tax court emphasized on remand that its value determinations were consistent with the market values proposed by the parties in their post-remand briefs, and therefore supported by the record.

We disagree for two reasons. First, the question is not whether the value determinations adopted by the tax court fall within the range of those proposed by the parties' briefs. Instead, the question is whether the value determinations are supported by the appraisal testimony in the record. *See S. Minn. Beet Sugar Coop. v. Cnty. of Renville*, 737 N.W.2d 545, 560 (Minn.2007) (explaining that the tax court must determine market value based on evidentiary support in the record). Second, the County's proposed market values rest upon a flawed premise: they are predicated upon lower capitalization rates of 7.71% and 7.47%, which lack support in the record.

In short, the tax court failed to explain its reasoning and describe the factual support in the record for fundamentally changing how it determined the overall capitalization rates. Because the tax court failed to follow our remand instructions, we conclude that the tax court abused its discretion in determining the market values for the mall.[5]

## II.

■ Having concluded that the tax court abused its discretion on remand in determining the market values for the mall, we next consider the appropriate re-

4. To calculate the increase in the market value determinations for both assessment dates, we use net operating income as determined by the tax court on remand and correct for mathematical errors ($9,646,599 for 2005 and $9,550,444 for 2006), divide those figures by the capitalization rates determined in *EPM I* (8.54% for 2005 and 8.26% for 2006) and on remand (7.71% for 2005 and 7.47% for 2006),

and subtract the resulting market value determinations to derive the difference.

5. Because we conclude that the tax court abused its discretion on remand when it fundamentally changed its capitalization methodology, it is not necessary to address the County's other arguments, and we decline to do so.

lief. EPM proposes that we reverse the tax court's new value determinations and remand to the district court, not to the tax court. But EPM cites no legal authority to support a remand to the district court. Moreover, we have consistently remanded a decision of the tax court to the tax court, rather than the district court, even if we had remanded to the tax court once before. *See, e.g., Wilson v. Comm'r of Revenue,* 656 N.W.2d 547, 555–58 (Minn.2003) (reversing the tax court's assessment of personal liability against a corporate officer of a delinquent corporation and remanding to the tax court for a second time). Consequently, we reject EPM's proposal to remand to the district court.

The only remaining issue in this case is the appropriate capitalization rate. We could remand to the tax court to determine the capitalization rates and market values consistent with our opinion or for an additional evidentiary hearing. *See Montgomery Ward & Co. v. Cnty. of Hennepin,* 450 N.W.2d 299, 308 (Minn.1990) (ordering the tax court to conduct a new trial, order discovery, and admit additional evidence). But here, we remand to the tax court for a more limited purpose. We affirmed the tax court's capitalization rates in *EPM I* as supported by the record. 797 N.W.2d at 199. We further clarified that if the tax court reopened the record on remand, it could "revisit the appropriate capitalization rates" in light of "changes in the appraisal testimony." *Id.* Yet on remand, the tax court opted not to reopen the record, and thus did not receive additional appraisal testimony. There is no need, then, to revisit the tax court's original determination of the capitalization rates.

Accordingly, we remand to the tax court to calculate the market values of the mall under the income capitalization approach

using the net operating income figures of $9,646,599 for 2005 and $9,550,444 for 2006 and the capitalization rates that we affirmed in *EPM I* of 8.54% for 2005 and 8.26% for 2006.[6] We direct the tax court to reconcile these market values with those it determined under the cost and sales comparison approaches in *EPM I,* and enter judgment of market value determinations for both assessment dates that are supported by the appraisal testimony in the current record. We also direct the tax court to consider the County's pending motion for costs and disbursements.

Reversed and remanded.

---

**6.** These net operating income figures were determined by the tax court on remand, and we affirm them in this appeal. We have corrected for mathematical errors.