ANDERSON, Justice.
This case returns to our court following a remand to the tax court. Relator Minnesota Energy Resources Corporation (MERC) previously challenged the determination by the Commissioner of Revenue (Commissioner) of the value of MERC's natural gas pipeline distribution system for the years 2008 through 2012. Both parties appealed the tax court's order valuing MERC's pipeline property, raising several arguments on appeal. Minn. Energy Res. Corp. v. Comm'r of Revenue (MERC I ), 886 N.W.2d 786, 791-92 (Minn. 2016). We largely affirmed the tax court's valuation decision, remanding only for further findings on the beta-factor calculation and reconsideration of MERC's external obsolescence argument. Id. at 790. Following the tax court's decision on remand, MERC appeals, contending that the tax court failed to follow our instructions on remand and failed to properly apply the clarified standard to its claim of external obsolescence.
FACTS
This appeal stems from MERC's challenge to the Commissioner's determination of the value of its natural gas pipeline distribution system for the years 2008 through 2012.[1] Following a 4-day trial at which the parties offered expert testimony on the valuation of MERC's pipeline system, the tax court found that MERC overcame the presumptive validity of the Commissioner's valuation for each of the years at issue. The tax court further determined that the value for the years 2008 through 2011 was lower than the Commissioner's valuation and that the value for 2012 was higher than the Commissioner's valuation. MERC I , 886 N.W.2d at 791. In reaching this decision, the tax court rejected MERC's argument that "it was entitled to receive a reduction in market value for external obsolescence."[2] Id. at 797-98.
MERC and the Commissioner appealed, and we largely affirmed the tax court's decision. Id. at 804. As it relates to MERC's argument regarding external obsolescence, we concluded that the tax court used the wrong standard-the Eurofresh standard[3] -to evaluate whether external obsolescence was present. Id. at 789-99. Because that erroneous legal standard "played a decisive role in the court's decision to reject MERC's external-obsolescence evidence," we remanded to the tax court "to reconsider whether external obsolescence impacted the pipeline distribution system's market value." Id. at 798, 790. Specifically, we "decline[d] to adopt the Eurofresh standard" because "we have never required taxpayers to make the heightened showing required by Eurofresh. " Id. at 798. We then provided the following instructions for the tax court on remand:
We do not suggest that the tax court, on remand, is required to find the existence *572 of external obsolescence or accept the testimony of MERC's witnesses . Rather, we hold that it evaluated MERC's evidence of external obsolescence under the wrong legal standard by relying on Eurofresh , and that MERC's evidence was at least sufficient to make out a prima facie case of external obsolescence . It will be the tax court's task on remand to consider all of the evidence presented to determine whether the evidence of external obsolescence is sufficient to support a downward adjustment to the estimated market value of MERC's property under the cost approach.
Id. at 799 (emphasis added).
On remand, the parties declined to submit additional evidence on the external-obsolescence issue, relying instead on their respective supplemental briefs. Minn. Energy Res. Corp. v. Comm'r of Revenue (MERC II ), Nos. 8041-R, 8135-R, 8271-R, 8375-R, 8482-R, 2017 WL 1430663, at *1 (Minn. T.C. Apr. 18, 2017). The tax court reviewed the entire record and concluded that "MERC failed to demonstrate, by a preponderance of the evidence, that the subject property suffered external obsolescence" in any of the 5 years at issue. Id. at *2. MERC now appeals, contending that 1) the tax court did not follow the directions we provided in MERC I and 2) our reference to "a prima facie case" shifted the burden to the Commissioner to provide additional evidence to rebut and overcome MERC's prima facie case of external obsolescence.
ANALYSIS
This appeal presents two issues. First, MERC contends that our decision in MERC I established a rebuttable, if not conclusive, presumption in its favor on the presence of external obsolescence. Second, MERC contends that the tax court erred, legally and factually, in rejecting its claim of external obsolescence.
"Generally, our review of the tax court's decision is limited to determining whether the court had jurisdiction, whether its decision was justified by the evidence and in conformity with law, or whether it committed any other error of law." Eden Prairie Mall, LLC v. County of Hennepin , 830 N.W.2d 16, 20 (Minn. 2013) (citing Minn. Stat. § 271.10, subd. 1 (2012) ). "We review the tax court's legal conclusions de novo, but we defer to the tax court's market value determinations unless they are clearly erroneous." Id. (citation omitted). "The tax court's value determinations are clearly erroneous if they are not reasonably supported by the record as a whole." Id. (citation omitted).
I.
MERC and the Commissioner disagree about the meaning of our explanation of the tax court's task on remand. MERC contends that our statement that its "evidence was at least sufficient to make out a prima facie case of external obsolescence," MERC I , 886 N.W.2d at 799, shifted the burden to the Commissioner to rebut and overcome MERC's prima facie case with additional evidence on remand. Because the Commissioner offered no additional evidence on remand, MERC maintains that its prima facie case stands and thus it established that the external obsolescence negatively impacted the value of its pipeline property.
The Commissioner, on the other hand, points to an earlier sentence in our opinion, where we said that "[w]e do not suggest that the tax court, on remand, is required to find the existence of external obsolescence or accept the testimony of MERC's witnesses." Id. Thus, the Commissioner argues, MERC retained the burden on remand to establish that its property *573 suffered from external obsolescence. Because the question on remand is whether MERC offered sufficient evidence to meet its burden, the Commissioner contends that the tax court did not commit a legal error in evaluating MERC's external-obsolescence claim on remand.
We agree with the Commissioner. Our decision in MERC I was neither a declaration that MERC's evidence of external obsolescence was conclusive nor a creation of a rebuttable presumption. Although we acknowledged that "MERC's evidence was at least sufficient to make out a prima facie case of external obsolescence," we also said that the tax court was not "required to find the existence of external obsolescence or accept the testimony of MERC's witnesses." Id. In fact, we remanded the case to the tax court in part because the tax court had not "view[ed] the evidence as a whole." Id. at 798-99. Thus, although MERC may have offered some credible evidence regarding external obsolescence, nothing in MERC I states or suggests that MERC was relieved of its burden of proof on remand. See Conga Corp. v. Comm'r of Revenue , 868 N.W.2d 41, 53 (Minn. 2015) (stating that even when the presumption of validity is overcome, the taxpayer "continues to bear the burden of proof in the proceeding").
Nor did we conclude in MERC I that the evidence established a rebuttable presumption on the question of external obsolescence. A "rebuttable presumption" is "[a]n inference drawn from certain facts that establish a prima facie case, which may be overcome by the introduction of contrary evidence." Rebuttable Presumption , Black's Law Dictionary (10th ed. 2014). Even if MERC presented a prima facie case before the tax court, this showing did not shift to the Commissioner the burden to prove the absence of external obsolescence. Rather, even with a prima facie showing, MERC retained the burden of persuasion to show the presence of external obsolescence. See S. Minn. Beet Sugar Coop. v. County of Renville , 737 N.W.2d 545, 558 (Minn. 2007) (explaining that "the taxpayer has the burden of proof at trial" to show that an assessment is invalid). MERC's argument that it should have prevailed on remand because the Commissioner did not present evidence to rebut its prima facie case of external obsolescence is "a mistaken attempt to take from the plaintiff's case one element and to shift to the defendant the burden of negative proof, whereas the load was on the plaintiff to establish the positive." Topinka v. Minn. Mut. Life Ins. Co. , 189 Minn. 75, 248 N.W. 660, 662 (1933). Indeed, by not submitting additional evidence, the Commissioner took the risk that the tax court would apply our decision in MERC I and find in favor of MERC. But MERC I did not preordain that result. Rather, as we instructed, the tax court was required to "consider all of the evidence presented" to determine whether MERC had shown by a preponderance of the evidence that it had experienced external obsolescence. MERC I , 886 N.W.2d at 799. The tax court did so, and it is that determination that we turn to next.
II.
On remand, the tax court determined that MERC's claim of external obsolescence failed. MERC now contends that, in analyzing its evidence of external obsolescence, the tax court applied the wrong standard, one that went beyond the Eurofresh standard that we rejected in MERC I . See id. at 798-99. Even if the tax court applied the correct standard, MERC argues, the evidence establishes that it is entitled to a downward adjustment in the value of its pipeline property because of external obsolescence.
*574 We rejected Eurofresh after determining that it is "inconsistent with ... the most persuasive measurement of the effect of negative externalities on value: [d]irect comparison of similar properties with and without external obsolescence." Id. at 799 (alteration in original) (citation omitted) (internal quotation marks omitted); see also Am. Express Fin. Advisors, Inc. v. County of Carver , 573 N.W.2d 651, 659-60 (Minn. 1998) (explaining that evidence regarding certain features of a facility that made it less desirable in comparison to similar facilities was relevant to the taxpayer's obsolescence claim). On remand, the tax court undertook a detailed evaluation of the credibility, reliability, and relevance of the evidence offered by MERC in support of its external obsolescence claim, considering multiple factors: the 2008 economic crisis and the impact of changing weather conditions, government regulations and rate-making decisions, and increased conservation and energy-efficiency efforts. The tax court also took into account evidence that MERC's number of customers and gas sales have, for the most part, increased slightly during each of the years at issue. Thus, we conclude that the tax court's analysis of the weight and credibility of these factors was not a reversion to the heightened Eurofresh standard that we rejected in MERC I .
Further, we conclude that the record amply supports the tax court's conclusion that MERC's evidence of external obsolescence was "not credible." "[T]he tax court is in the best position to evaluate the credibility of the witnesses." Beck v. County of Todd , 824 N.W.2d 636, 639 (Minn. 2013) (citations omitted) (internal quotation marks omitted). The tax court concluded that MERC's expert failed to adequately support his conclusion of external obsolescence, and the testimony of MERC's fact witnesses was at times "nothing more than broad generalizations" or contradictory. MERC II , 2017 WL 1430663, at *9. Based on our review of the record, we conclude that the tax court's decision is "justified by the evidence and in conformity with law." Eden Prairie Mall, LLC , 830 N.W.2d at 20.
CONCLUSION
For the foregoing reasons, we affirm the decision of the tax court.
Affirmed.

MERC's pipeline distribution system and the Commissioner's valuation of that property for purposes of Minnesota's personal property tax assessment are explained in greater detail in MERC I , 886 N.W.2d at 790-91.

External obsolescence is a form of depreciation that affects the value of a property and is accounted for under the cost approach. See Guardian Energy, LLC v. County of Waseca , 868 N.W.2d 253, 257 n.5 (Minn. 2015). It is a loss in value caused by outside influences that is "almost always incurable." MERC I , 886 N.W.2d at 797 (citation omitted) (internal quotation marks omitted).

Eurofresh, Inc. v. Graham County , 218 Ariz. 382, 187 P.3d 530 (Ariz. Ct. App. 2007).